UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

L.D., Jr., a minor child,

       Plaintiff,

       v.

MICHAEL J. ASTRUE,
COMMISSIONER of the Social
Security Administration,

       Defendant.

Civil No. 06-1335-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff, a minor, brings this action seeking benefits pursuant to § 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)). Plaintiff requests judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) affirming denial of his application for Supplemental Security Income (SSI) disability payments.

After reviewing the record of this case fully, this court concludes that the Commissioner's decision must be remanded for further proceedings.

1 - OPINION AND ORDER

**ADMINISTRATIVE BACKGROUND**

Plaintiff's mother filed plaintiff's present application for SSI on March 25, 1999. This application was denied initially and upon reconsideration. Transcript of Record (Tr.) at 57-60, 67-69. In December 2000, an Administrative Law Judge (ALJ) conducted a hearing and heard testimony from plaintiff's mother and plaintiff, who was represented by an attorney. Tr. 37. The ALJ subsequently issued a ruling that found that although plaintiff had severe impairments, the impairments did not meet or equal, medically or functionally, the severity of any impairments described in the Listing of Impairments. Tr. 34-49; 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff requested review of the decision and the Appeals Council remanded for further proceedings because the recording of the hearing was inaudible. Tr. 18, 78. A second hearing was conducted, and the ALJ heard testimony from plaintiff's mother. Tr. 508-36.

On April 7, 2004, the ALJ issued a new decision, again finding that plaintiff did not satisfy the criteria for childhood SSI disability benefits at any time relevant to his March 1999 application. Tr. 15-30. On July 18, 2006, the Appeals Council denied plaintiff's Request for Review and adopted the ALJ's ruling as the final decision of the Commissioner. Tr. 6-9.

Plaintiff filed a timely Complaint seeking judicial review. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**APPLICABLE STANDARDS**

Certain "final rules" govern childhood disability assessments. *See* 65 Fed. Reg. 54,747, (September 11, 2000) *corrected by* 65 Fed. Reg. 80,307 (December 20, 2000). These final rules instruct the SSA to follow a three-step sequential evaluation, considering: (1) whether the child

is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924.

A child's functional limitations will be evaluated in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself or himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

An impairment "causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924 (d). A "marked limitation" seriously interferes with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). In comparison, an "extreme limitation" is more significant, and interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

A medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d).

**BACKGROUND**

Plaintiff was born in September 1989. He has received treatment and medications for Attention Deficit/Hyperactivity Disorder (ADHD) since he was two years old. Tr. 290.

In early 1994, he was sexually abused by an adult neighbor. A psychiatric consultation report and an educational services screening in early 1995 addressed plaintiff's history of sexual abuse, ADHD, asthma, seizures, and aggressive behavior. Tr. 140; 299-301. Test results revealed significant developmental delay, especially in the areas of expressive and receptive language. Tr. 142.

In July 1995, Howard L. Deitch, Ph.D., performed a psychological assessment of plaintiff. Doctor Deitch learned that plaintiff was subjected to sexual abuse a second time at the end of the 1995 school year. Tr. 290-91. The doctor's cognitive testing of plaintiff yielded Verbal, Performance, and Full Scale I.Q. scores of 76, 74, and 73, respectively, and he diagnosed ADHD, predominantly hyperactive-impulsive type, Post-Traumatic Stess Disorder (PTSD), Borderline Intellectual Functioning, and Learning Disorder, NOS. Doctor Deitch assigned a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms of impairment. Tr. 292-93.

On July 23, 1999, Terry Jenkins, Psy.D., performed a psychological evaluation. Doctor Jenkins diagnosed Borderline Intellectual Functioning based on plaintiff's Verbal, Performance, and Full Scale IQ scores. Tr. 355, 358. Doctor Jenkins administered a standardized Child Behavior Checklist, which revealed serious problems with aggressive behavior, attention, and concentration. Tr. 356. The doctor assessed a Children's Global Assessment Scale (CGAS) score of 44, indicating a moderate degree of interference in functioning in most social areas or severe impairment of functioning in one area. Tr. 358.

On March 20, 2001, psychologist Paul Guastadisegni, Ph.D., made an extensive neuropsychological assessment of plaintiff. Tr. 413-22. His testing of plaintiff yielded spelling and reading scores that were "extremely low" and "disturbing for a child of his age and suggested significant delays." Tr. 419-20. Doctor Guastadisegni diagnosed ADHD, PTSD, a Reading Disorder, a Written Expression Disorder, and Borderline Intellectual Ability. Tr. 421. He assigned a GAF score of 50, indicative of serious symptoms or impairment. *Id*.

Gary Sacks, Ph.D., conducted a neuropsychological screening examination of plaintiff at the request of the ALJ. Doctor Sacks diagnosed ADHD, in remission with treatment, a Reading Disorder, and a Disorder of Written Expression. He also assigned a GAF score of 50. Tr. 455.

He also provided checkmark responses indicating his assessment of the six functional equivalence domains listed above. He rated plaintiff's limitations in the domain of "acquiring and using information" as marked, plaintiff's limitations in "attending and completing tasks," and "interacting and relating with others" as "less than marked," and rated all other domains as having no limitation. Tr. 458-59.

The record contains a number of other evaluations and opinions from health professionals. Where necessary, these evaluations and opinions regarding plaintiff are addressed below.

**QUESTIONS PRESENTED**

Plaintiff contends that the ALJ's decision failed to identify and consider all of plaintiff's severe impairments, improperly rejected medical source opinions and evidence presented by plaintiff's mother and his special education teacher, and failed to make proper findings regarding

5 - OPINION AND ORDER

whether plaintiff meets, medically equals, or functionally equals the listed impairments relevant to childhood disability.

**ANALYSIS**

After reviewing the parties' briefing, plaintiff's primary arguments are identified as challenges to (1) the ALJ's omissions pertaining to plaintiff's reading achievement scores and percentile ranks; (2) the ALJ's implicit rejection of diagnoses from examining psychologists; and (3) the ALJ's insufficient consideration of non-medical or lay testimony.

    1.    **Plaintiff's reading achievement scores and percentile ranks**

Counsel asserts that plaintiff's scores as evaluated by four psychologists are at least three Standard Deviations below the mean on standardized testing. Accordingly, plaintiff contends, the scores support a finding that plaintiff has an "extreme" limitation.

School psychologist Sylvia Schultz, M.S., evaluated plaintiff's scores on the Woodcock-Johnson-Revised Test of Achievement (WJ-R). Tr. 239. Doctors Guastadisegni and Sacks evaluated plaintiff's scores on the Wide Range Achievement Test (WRAT-3). Tr. 419, 454. School psychologist Marlaine Jensen, M.Ed., Ed.S., evaluated plaintiff's scores on the Woodcock Johnson Test of Achievement (WJ-III). Tr. 430.

Plaintiff argues that these scores reflect that plaintiff falls three standard deviations below the mean in at least the Reading component of the "acquiring and using information" domain. This domain examines how well a child acquires or learns information, and how a child uses the information learned. *See* 20 C.F.R. § 416.926a(g).

Defendant responds to plaintiff's argument by asserting that the records failed to establish that plaintiff's scores at issue were three standard deviations below the mean, but "contain only raw scores that have not been converted to standard deviations." Dft. Resp. at 9.

The ALJ concluded that plaintiff had marked, not extreme, limitations in the domain of "acquiring and using information." Tr. 26. However, the ALJ acknowledged that a child is deemed to have an extreme limitation "when he [or she] has a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his [or her] day-to-day functioning in domain-related activities is consistent with that score." Tr. 25 (citations omitted).

The ALJ noted that although plaintiff "has significant learning difficulties," he is able to use "speech and language to fulfill his intent, particularly of a low-level nature, and for conversational purposes." Tr. 26. The ALJ also noted that plaintiff could verbally communicate with others and "use the phone and find his way around town." *Id*.

As noted above, a marked limitation is one that seriously interferes with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is more than marked, and is one that interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

The court has examined the scores cited in the record. Plaintiff disputes whether the scores in question are "raw," contending that each is clearly labeled as "standard" or "scaled." In light of the ambiguity surrounding these scores, further proceedings are necessary to evaluate plaintiff's SSI claims adequately.

The necessity for further proceedings is underscored by the fact that the medical professionals' descriptions of plaintiff's impairments in this area suggest that plaintiff's limitations may interfere very seriously with the ability to independently initiate, sustain, or complete activities and therefore should be construed as an extreme limitation. Plaintiff's "reading and written language skills are much lower, falling within the deficient range." Tr. 239 (school psychologist Schultz addressing WJ-R scores). Plaintiff has "significant problems with reading, spelling, and arithmetic" and is "within the extremely low range in reading." Tr. 419 (Dr. Guastadisegni addressing WRAT-3 scores). Plaintiff's scores show "very low vocabulary skills compared to other students his age." Tr. 430 (school psychologist Jensen addressing WJ-III scores). Plaintiff "meets criteria for reading and spelling learning disorders." Tr. 454 (Dr. Sacks addressing WRAT-3 scores).

Moreover, defendant's attempts to bolster the ALJ's analysis regarding these scores by referring to two other assessments is unpersuasive. Defendant refers to Doctor Jenkins, who assessed that plaintiff was within two and a half standard deviations in spatial/sequential processing splits, indicating substantial impairment in the ability to encode auditory and visual stimuli for subsequent mental processing, and Melaney Bork, M.S., CFY-SLP, who assessed plaintiff in speech and language at "only two standard deviations below the mean." Dft. Resp. at 9-10 (citing Tr. 357, 361). In effect, defendant refers to calculations regarding plaintiff's limitations that were two, and two and a half, standard deviations below the mean to refute whether other assessments might be construed fairly as being three standard deviations below the mean. This reasoning fails to clarify how to best interpret the scores at issue.

This court acknowledges that a claimant bears the initial burdens of proving disability. However, the ALJ also "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations and citations omitted). "This duty extends to the represented as well as to the unrepresented claimant." *Id*.

The responsibility to develop the record rests with the ALJ in part because disability hearings should not be adversarial in nature. *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). Administrative regulations also mandate the ALJ to look "fully into the issues" at hearings. 20 C.F.R. §§ 404.944, 416.1444.

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised during the presentation of medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999 (as amended); *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (explaining how an ALJ may obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e), 416.912(e) (obtaining additional information from treating doctors).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert or to order a consultative examination. *See* 20 C.F.R. §§ 404.1519a and 416.919a; *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998) (the ALJ may be required to call a medical expert to assist in determining when the plaintiff's impairments became disabling in cases in which the record is ambiguous).

The ambiguity surrounding the proper interpretations of the records of Sylvia Schultz, M.S., and Drs. Guastadisegni, Jensen, and Sacks, coupled with the issues addressed below, compel this court to conclude that this action must be remanded to the Commissioner for further proceedings to allow the ALJ to develop the record more thoroughly.

### 2. The ALJ's implicit rejection of diagnoses

Plaintiff also challenges the ALJ's evaluation of several diagnoses. These include the diagnosis of Borderline Intellectual Functioning made by examining psychologists Dr. Schultz, Tr. 238, Dr. Jenkins, Tr. 358, Dr. Guastadisegni, Tr. 421, and Dr. Jensen, Tr. 429; the diagnosis of ADHD made by Dr. Jenkins, Tr. 358, and Dr. Guastadisegni, Tr. 421; the diagnosis of PTSD made by Dr. Guastadisegni, Tr. 421, and the diagnosis of Oppositional Defiant Disorder made by Dr. Jenkins, Tr. 358.

Plaintiff contends that in light of the scope of these diagnoses, the ALJ erred in concluding that plaintiff's ADHD was "in remission with medication," Tr. 24, and that plaintiff "does not have marked limitations in at least two domains or an extreme limitation in any domain." Tr. 28. This court concludes that further proceedings are necessary to address these diagnoses.

Defendant responds that any failure by the ALJ to construe the diagnoses at issue as indicating severe impairments was harmless, because the ALJ "designated the more specific diagnoses of reading disorder and disorder of written expression," and these diagnoses were "supported by the report of State agency psychologist, Dr. Lahman, who noted that the diagnosis of verbal learning disorder better described Plaintiff's cognitive status." Dft.'s Resp. at 17 (citing

Tr. 395, 399). Defendant contends that this establishes that the ALJ "did not disregard symptoms or test results merely because they may have been attributable to a different diagnosis." *Id*.

However, the ALJ's ruling fails to make any reference to Dr. Lahman or his diagnosis. Adopting defendant's *post hoc* theory to bolster the ALJ's decision would "overstep" the court's "institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (remand for further proceedings is proper when an ALJ's decision cannot stand on its own erroneous rationale); *see also Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]f the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline").

The diagnoses at issue support findings that plaintiff's ADHD is not in remission, suffers PTSD, and may have multiple marked functional limitations. Failing to address such diagnoses fully cannot be disregarded as harmless. To reject opinions of treating physicians that conflict with that of an examining physician, the ALJ must make findings that set forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citations and quotations omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Id* (citation and quotation omitted).

Upon remand these diagnoses shall be reviewed and addressed. If necessary, plaintiff's medical evidence shall be developed further to ascertain the extent to which plaintiff is limited in the relevant domains.

### 3. The ALJ's consideration of lay testimony

Counsel also argues that the ALJ erred in discrediting evidence presented by plaintiff's mother and plaintiff's special education teacher. The ALJ summarized the testimony from plaintiff's mother as follows:

> The claimant's mother testified that her son's hygiene is poor and he refuses to take baths. He is non-compliant with chores. He wears dirty clothes and wears pajamas under his clothes for weeks at a time. He pushes around his siblings and has hit and kicked his mother. He has one friend that comes over. He remains in the house most of the time and rarely goes out to play. His sleeping has improved with medication. His asthma is generally well-controlled but he has occasional bad attacks. He became depressed after the death of his father in 2002.

Tr. 24.

The ALJ viewed this testimony as "not entirely credible" because the record lacked evidence of violent behavior, plaintiff's mother told Dr. Sacks that plaintiff avoids physical fights and had few negative reports from teachers, and plaintiff told Dr. Sacks that he visits friends daily and plays soccer. *Id*. The ALJ also commented that testimony from plaintiff's mother should be viewed in the context of the fact that she has "given up the idea of working she [had earlier] professed" because she "now has a pending SSI application in her own right." *Id*.

The ALJ also acknowledged that plaintiff's special education teacher, Ms. Grace O'Hanlon, provided the opinion that plaintiff suffers marked limitations in acquiring and using

information, attending and completing tasks, interacting and relating with others, and in caring for himself. Tr. 28. The ALJ again noted that plaintiff's mother reported to Dr. Sacks that plaintiff had few negative reports from teachers and also described Ms. O'Hanlon as "not an acceptable medical source" before concluding that Dr. Sacks' opinions were entitled to greater weight. *Id*.

In determining a claimant's possible disability, an ALJ must consider lay witness testimony when it is presented. 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay testimony as to a claimant's symptoms or how an impairment affects a person is considered competent evidence and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

To discount the testimony of lay witnesses, an ALJ must give reasons that are germane to each witness. *Stout*, 454 F.3d at 1053; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."

The lay testimony at issue includes descriptions from plaintiff's mother regarding plaintiff's poor hygiene, his physical behavior, and his emotional condition. Tr. 512-35. Interspersed with this testimony is questioning from the ALJ regarding the mother's own disability application, Tr. 513, her parenting skills, Tr. 517-20, and why she failed to describe plaintiff's violent behavior to agency psychologists, Tr. 532-33.

13 - OPINION AND ORDER

While plaintiff's mother may have been inconsistent regarding her specific testimony about plaintiff's physical behavior, the ALJ offered no germane reasons for ignoring her testimony about plaintiff's hygiene and mental state. The ALJ's concerns about the "context" of the testimony in light of the mother's SSI application are troubling. The possibility that the mother may be entitled to disability benefits fails, by itself, to cast doubt upon her credibility.

Similarly, the ALJ's reasoning for disregarding Ms. O'Hanlon's significant testimony is unpersuasive. There is no dispute that Ms. O'Hanlon is a "non-medical source," and that plaintiff's mother disclosed that plaintiff received few negative behavior reports from teachers, and that Dr. Sacks' medical opinion is entitled to greater weight. However, none of these is a germane reason for disregarding or discounting Ms. O'Hanlon's opinions about plaintiff's marked limitations.

When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053. In this case, the court cannot so conclude. Accordingly, for this and the other reasons addressed herein, remand is appropriate in this matter.

On remand, the ALJ shall consider the lay testimony presented and, in accordance with controlling Ninth Circuit law, shall either take the testimony into account or expressly determine to disregard the testimony. If the testimony is disregarded, the ALJ must provide reasons that are germane to the witness for doing so. *Lewis*, 236 F.3d at 511.
14 - OPINION AND ORDER

### 4. **Remand**

For the reasons stated, this action must be remanded. The statute granting this court jurisdiction to review administrative decisions in Social Security benefits cases permits two kinds of remands. 42 U.S.C. § 405(g). Specifically, the fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n.2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id*.

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A decision to remand for further proceedings is appropriate when such proceedings are likely to be useful. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Further proceedings will be useful, and this court exercises its discretion to remand this case for additional administrative proceedings. Moreover, this court concludes that it is appropriate that these further proceedings ordered by this court take place before a different ALJ.

Specifically, pursuant to this remand, plaintiff and Commissioner shall develop the record regarding the extent of plaintiff's impairments. Upon remand, the new ALJ is instructed to obtain updated medical records concerning plaintiff. The new ALJ shall also provide plaintiff an opportunity to submit additional medical evidence in support of his alleged limitations, and shall address and ascertain plaintiff's functional limitations and his assessments in accordance with all applicable administrative and legal standards.

Plaintiff shall be permitted to be represented by counsel, present witnesses and evidence, and to refer to and submit into the record all testimony and evidence that has been presented already on his behalf. The new ALJ shall address and give full consideration to all lay witness testimony submitted in support of plaintiff's request for benefits, including but not limited to testimony from plaintiff's mother and Ms. O'Hanlon.

The new ALJ shall also provide adequate explanations establishing that all medical evidence and all lay witness testimony was considered in accordance with all applicable standards and laws, and fully evaluated in the assessment of plaintiff's possible eligibility for benefits.

**CONCLUSION**

The record of this case has been reviewed fully. This court concludes that the decision of the Commissioner regarding the SSI benefits application for plaintiff L.D., Jr., must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this  25  day of October, 2007.

                                                  /s/  Ancer L. Haggerty  
                                                       Ancer L. Haggerty  
                                                United States District Judge